UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PAMELA SHELTON,**

   **Plaintiff,**

v.                                              Case No.: 8:12-cv-02757-T-27TBM

**PRICE WATERHOUSE COOPERS, LLP,**

   **Defendant.**
_____/

# ORDER

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 21), and Plaintiff's opposition (Dkt. 29). Upon consideration, the motion (Dkt. 21) is DENIED *in part* as to Counts II, III, and IV.

## INTRODUCTION

Plaintiff `claims that Defendant interfered with her rights under the Family and Medical Leave Act a("FMLA") and that her termination was in retaliation for taking FMLA leave. Shelton also claims that PWC discriminated against her on account of a disability and refused her request for reasonable accommodations, in violation of the Florida Civil Rights Act and the Americans with Disabilities Act. PWC moves for summary judgment on all claims. Shelton responds by arguing that genuine disputes of material fact remain, which preclude summary judgment.

## STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual

1

dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010).

The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine dispute over a material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1998).

### DISCUSSION

The FMLA creates two types of claims: interference claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive rights under the FMLA; and retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the FMLA. *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012); *Strickland v. Water Works & Sewer Bd. of City of Birmingham*,

239 F.3d 1199, 1206 (11th Cir. 2001). Shelton asserts both.

### *Count I: FMLA Interference*

The FMLA prohibits employers from "interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights" protected by the FMLA. 29 C.F.R. § 825.220(a)(1). Interference includes refusing to authorize FMLA leave, discouraging the use of FMLA leave, manipulation to avoid responsibilities under the FMLA, and changing the essential functions of the job in order to preclude the taking of leave. *Id.* § 825.220(b).

To prove a *prima facie* interference claim, Shelton must demonstrate that she was denied a benefit to which she was entitled under the FMLA. *Pereda*, 666 F.3d at 1274 (quoting *Harley v. Health Ctr. of Coconut Creek*, 487 F. Supp. 2d 1344, 1357 (S.D. Fla. 2006)). There is no need for Shelton to prove that PwC *intended* to deny her a right because "the employer's motives are irrelevant." *Strickland*, 239 F.3d at 1208. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005).

Shelton alleges that PwC interfered with her FMLA rights by failing to categorize her unforeseeable absences as intermittent FMLA leave. She alleges that PwC knew of her serious health condition and was therefore obligated to inquire further into whether her absences qualified for FMLA leave when she called in on sick leave. *See* Dkt. 29 at 8 ("Shelton's FMLA interference claim stems from the fact that her unplanned absences should have been protected by the FMLA.").

Intermittent FMLA leave is available for unanticipated medical treatment of a serious health condition, and may include leave of "periods from an hour or more to several weeks." 29 C.F.R. § 825.202(b)(1). If the need for intermittent leave is unforeseeable, the employee must provide notice

3

to the employer "as soon as practicable under the facts and circumstances of the particular case." *Id.* § 825.303(a). The notice need not expressly invoke the FMLA, but it must *"be sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." Id.* § 825.302(c).

PwC argues that it could not have interfered with Shelton's FMLA rights because she was aware of the availability of intermittent FMLA leave, yet never specifically requested it. *See* Dkt. 21 at 13-15. The FMLA's regulatory scheme, however, does not require an employee to specifically request FMLA leave even if she is aware of its availability. And Shelton's knowledge of the availability of intermittent FMLA leave is immaterial to whether she provided notice sufficient to invoke PwC's obligations under the FMLA. *See Reed v. Buckeye Fire Equipment*, 241 Fed. Appx. 917, 924 n.5 (4th Cir. 2007) (The FMLA regulations do "not take account of what the employee may know or have access to or any notice previously supplied by the employer. Therefore, what [plaintiff] may have known or had access to is immaterial to the question of whether Buckeye satisfied its obligation[s]" under the FMLA.); *Wilson v. Lemington Home for the Aged*, 159 F. Supp. 2d 186, 194 (W.D. Pa. 2001) (employee's awareness of FMLA policies is "irrelevant" to interference claim); *Slanaker v. AccessPoint Employment Alternatives, LLC*, No. 07-11024, 2008 WL 408519, at *4 (E.D. Mich. Feb. 13, 2008) ("The fact that Plaintiff knew Defendants' FMLA procedures did not alleviate their obligation, once given sufficient notice, to designate the leave as FMLA qualifying. It is the employer's obligation to designate whether leave is FMLA qualifying 'in all circumstances' without regard to the level of the employee's knowledge of the FMLA procedures.").

PwC cites *Knox v. City of Monroe*, Civil Action No. 07-606, 2009 WL 57111 (W.D. La. Jan. 8, 2009), to support its contention that Shelton's knowledge of intermittent leave precludes an

interference claim. *Knox* does not support that proposition, however. In *Knox*, the employee alleged that the employer interfered with her FMLA rights by not warning her that she would face discharge unless she took FMLA leave, by not informing her that intermittent FMLA leave was available, and by discharging her to prevent her from invoking her FMLA rights. *See id.* at *5. The court granted the employer summary judgment on the interference claim. Even though the employer argued that the employee could not state a claim for interference because she was on notice of her intermittent leave rights, the court did not grant summary judgment on that basis. Rather, the court concluded that "[t]here is no evidence that, prior to her discharge, [the employee] requested FMLA leave, attempted to take FMLA leave, told [her employer] she needed surgery, *or placed him on notice otherwise that she was exercising or attempting to exercise her rights under the FMLA.*" *Id.* at *5 (emphasis added). Summary judgment was granted, therefore, not because the employee was on notice of her rights, but because she failed to give sufficient notice to the employer.[1]

Shelton's interference claim turns on whether she provided sufficient notice that she was taking leave for a potentially FMLA-qualfying reason. If Shelton provided sufficient notice, PwC was obligated to either designate the leave as FMLA-qualifying or further inquire into whether the unforeseeable absences should be categorized as intermittent FMLA leave. *See* 29 C.F.R. §§ 825.300(d)(1), § 825.301(a). If she did not provide adequate notice, then PwC is entitled to judgment. *See Willmore-Cochran v. Wal-Mart Assocs., Inc.*, 919 F. Supp. 2d 1222, 1247 (N.D. Ala.

---

[1] As a corollary, PwC argues that Shelton cannot prevail on her interference claim because the option of intermittent FMLA leave was presented to her and she turned it down. This argument fails for two reasons. First, Shelton did not refuse FMLA leave when it was offered. When Monica Barrett and Chris Herron encouraged her to take FMLA leave to treat her condition in November 2010, she accepted the offer and went on full-time FMLA leave after initial reticence (Dkt. 24 at 151:10-152:7, 181:13-19). Second, even if Shelton had turned down FMLA leave in November 2010, that fact is not material to whether she provided sufficient notice to PwC that her other absences throughout 2010 and 2011 were due to a potentially FMLA-qualifying reason.

2013) ("Even if an absence is for a reason that would qualify for protected leave under the FMLA, the employer is not guilty of interference unless the employee affords the employer with the notice required under the act.") (citing *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005)).

If an employee has previously taken FMLA leave and requires additional or subsequent FMLA leave for the same serious health condition, the "employee must specifically reference either the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.303(b). Calling in "sick" without providing more information is *not* sufficient notice under the FMLA. *Id.*[2] In determining whether Shelton's notice was sufficient "'the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1435 (11th Cir. 1997) (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)). What is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case. *Singletary v. Stops, Inc.*, No. 6:09-cv-1763-Orl-19KRS, 2010 WL3517039, at *12 (M.D. Fla. Sep. 7, 2010) (quoting *Manuel*, 66 F.3d at 764).

Whether an employee's notice is sufficient to apprise the employer of the need for FMLA leave is a mixed question of fact and law. *See Strickland*, 239 F.3d at 1208.[3] The jury is required to

---

[2] The comments to the rule amendments in 2009 confirm that an employee is specifically required to reference the previously qualifying reason in order to provide sufficient notice. *See* 73 F.R. 67934-01, 68009 (Nov. 17, 2008). Nevertheless, the employer is still obliged to inquire if additional information is needed to determine whether the leave is FMLA-qualifying. 73 FR 67934-01, 68009 (Nov. 17, 2008) ("[T]he employer's obligation to inquire if additional information is needed to determine whether the leave is FMLA-qualifying remains the same as it is under the current regulations. No change in this obligation was proposed . . . and none is intended in the final rule.").

[3] In *Strickland*, the Eleventh Circuit observed, "If a jury made these findings, the outcome of the case would turn on a *question of law*: to wit, whether Strickland *gave sufficient notice* to his employer to invoke the substantive protections of the FMLA." 239 F.3d at 1208 (emphasis added). Courts remain divided over whether the sufficiency of notice is a question of fact or a mixed question of fact and law to be ultimately decided by the court. *Compare Hopson*

determine the facts relative to the notice given, while the court determines whether those facts are reasonably sufficient to give an employer notice as required by the FMLA. *Sarnowski*, 510 F.3d at 403; *Hayduk*, 580 F. Supp. 2d at 468. For summary judgment purposes, therefore, the appropriate inquiry is whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has complied with the FMLA's notice requirements as a matter of law. *See York v. AK Steel Corp.*, No. C-1-04-250, 2005 WL 3338696, at *5 (S.D. Ohio Dec. 8, 2005).

It is undisputed that Shelton took full-time FMLA leave on multiple occasions relating to her back problem. However, the absences Shelton seeks to have categorized as unforeseeable intermittent leave were prefaced, on multiple (but not all) occasions, by Shelton calling in "sick" without mentioning her serious health condition or previous FMLA leave. *See* Dkts. 25-2, 25-3, 25-4, 25-5, 25-6, 25-7, 25-10, 25-13, 25-15, 26-3, 26-4, 26-5, 26-11. If undisputed, this may entitle PwC to summary judgment consistent with the FMLA regulations.

### Need for Supplemental Briefing

Unfortunately, the parties have not adequately addressed the sufficiency of Shelton's notice

---

*v. Quitman Cnty. Hosp. & Nursing Home, Inc.*, 126 F.3d 635 (5th Cir. 1997) ("Such determinations are questions of fact and better left to the jury with its traditional means of assessing human behavior and expectations."); *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) ("Whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury."); *Mora v. Chem-Tronic, Inc.*, 16 F. Supp. 2d 1192, 1209 (S.D. Cal. 1998) ("Generally, whether notice is adequate is a question of fact."), *with Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003), *abrogated by regulation on other grounds as stated in Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614-15 (6th Cir. 2013) ("[I]t seems more accurate to describe notice as a mixed question: surely there are some facts that as a matter of law are not sufficient reasonably to give an employer notice as required by the FMLA. Therefore, for summary judgment purposes, we should determine whether, viewing the facts in the light most favorable to [the plaintiff, the plaintiff] has complied with the FMLA's notice requirements as a matter of law."); *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 468 (W.D. Pa. 2008) ("Issues of notice are mixed questions of fact and law, where the factfinder 'determine[s] the facts of the notice given' while the Court 'determine[s] whether those facts are sufficient reasonably to give an employer notice as required by the FMLA.'") (quoting *Cavin*); *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) (holding that disputes over "the precise content of the notice given" must be resolved by the trier of fact but that the ultimate determination is whether the employee "gave legally sufficient notice").

with citations to the record evidence. Summary judgment may therefore be granted on that basis only after giving the parties notice and a reasonable time to respond. Fed. R. Civ. P. 56(f); *Karlson v. Red Door Homes, LLC*, ___ Fed. Appx. ___, No. 12-14176, 2014 WL 228697, at *1 (11th Cir. Jan. 22, 2014); *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1264-65 (11th Cir. 2008). Because it appears that PwC may be entitled to summary judgment on Count I on grounds not adequately briefed, the parties are notified that summary judgment may be granted on the basis that the notice provided by Shelton was insufficient under § 825.303(b) to invoke PwC's obligations and responsibilities under the FMLA. The parties are directed to file supplemental briefs on this issue, as set forth below.

### *Count II: FMLA Retaliation*

When, as here, there is no direct evidence of retaliation, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is applied to FMLA retaliation claims. *See Strickland*, 239 F.3d at 1207. In the first step of a *McDonnell Douglas* analysis, the plaintiff must prove a *prima facie* retaliation claim by showing "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to a protected activity." *Pereda*, 666 F.3d at 1275 (quoting *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004)). If the plaintiff makes out a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse employment action. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual. *Id.*

The temporal proximity of Shelton's FMLA leave to her termination (two months) raises a genuine dispute of material fact concerning whether her termination was causally related to her

FMLA leave. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) ("[T]emporal proximity alone is sufficient to establish an inference of retaliation" when that proximity is "very close."); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficiently close to create causal nexus); *Orquiola v. Nat'l City Mortg. Co.*, 510 F. Supp. 2d 1134, 1155 (N.D. Ga. 2007) (two-month delay satisfies "very close" temporal proximity requirement). *Cf. Henderson v. FedEx Express*, 442 Fed. Appx. 502, 506 (11th Cir. 2011) ("If there is a delay of more than three months between the two events, then the temporal proximity is not close enough . . . .").

Although PwC has articulated a legitimate nondiscriminatory reason for Shelton's termination (excessive absences), Shelton has presented evidence that the reason was pretextual. In any event, the question of whether a reason is pretextual is one best reserved for the jury. *See Dybczak v. Tuskegee Inst.*, 737 F.2d 1524, 1528 n.4 (11th Cir. 1984) ("The 'ultimate question' for the jury is that of pretext."). Summary judgment is therefore due to be denied on Count II.

### *Counts III and IV: FCRA and ADA*

Under the ADA,[4] no employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that she "(1) is disabled, (2) is a 'qualified' individual, and

---

[4] "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007); *see Samson v. Fed. Express Corp.*, ___ F.3d ___, No. 12-14145, 2014 WL 1226847, Slip Op. at 8 n.2 (11th Cir. Mar. 26, 2014) (ADA and FCRA claims analyzed together under the same framework).

(3) was subjected to unlawful discrimination because of [her] disability." *Samson*, Slip Op. at 8. A "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

PwC argues that Shelton is not a "qualified individual" because she could not perform the essential functions of her position. Specifically, PwC contends that regular, on-site attendance was an "essential function" of Shelton's position. Shelton disagrees, arguing that her role could be performed from home on occasion.

"Essential functions" are "the fundamental job duties of the employment position," but do not include "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Whether a particular function is essential is a fact-specific inquiry "evaluated on a case-by-case basis by examining a number of factors." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1230 (11th Cir. 2005). Among the relevant factors is the "employer's judgment as to which functions are essential." § 1630.2(n)(3)(i). Although the employer's judgment is "'entitled to substantial weight in the calculus,' this factor alone is not conclusive." *Samson*, Slip Op. at 9 (quoting *Holly*, 492 F.3d at 1258). Other relevant factors include

> any written job description prepared before advertising or interviewing applicants for the job; the amount of time spent on the job performing the function; the consequences of not requiring the employee to perform the function; the terms of any collective bargaining agreement; the work experience of past employees in the job; and the current work experience of employees in similar jobs.

*Id.* at 10 (citing § 1630.2(n)(3)(ii)-(vii)). There are also three non-exclusive bases on which a particular job function may be deemed essential: (1) the position exists to perform that function; (2) a limited number of employees are available among whom that job function can be distributed; and

(3) the job function is "highly specialized" so that the incumbent is hired for their expertise or ability to perform that function." *Id.* (citing § 1630.2(n)(2)).

PwC contends that on-site attendance is an essential function of the job because those in Shelton's position could be required to physically enter the production floor to restart or reboot servers and air conditioning units, participate in conference calls during crises, receive deliveries, process backup media, and handle visitor requests, all of which required a physical presence. PwC also argues that not requiring regular, on-site attendance could be catastrophic because any outage at the site would cut off all remote systems operations. It further contends that because only two M&R staff members were assigned to each shift at the time Shelton was terminated, physical attendance was critical.

Despite PwC's reasons for requiring regular on-site attendance, Shelton has adduced sufficient evidence to raise a genuine dispute of material fact as to whether regular attendance is, in fact, an essential function of her position. She testified that her presence on the server floor was rarely required, and even if it was, the job of rebooting a server from the floor could be either done online or managed by the other employees on site. *See* Dkt. 24-10 at 80:13-81:5, 83:12-20, 90:2-6, 92:24-93:3, 96:24-97:1. She also contends that receiving deliveries, processing backup media, and handling visitor requests are not valid factors for consideration because receiving deliveries and handling visitors were not included in her job description, visitors rarely appeared, and she had been taken off media duty prior to her termination. *Id.* at 97:15-21, 103:11-105:11; Dkt. 30-2 at 26. She testified that her other responsibilities could be handled remotely. *See, e.g., id.* at 107:16-20 (monitoring environmentals).

Whether a job function is essential is a question of fact, and PwC has not demonstrated the

absence of genuine issues as to whether regular, on-site attendance was essential to the position. *See Samson*, Slip Op. at 12-13 (whether function is essential should be put to the jury); *Keith v. Cnty. of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013) ("Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment."). Accordingly, PwC is not entitled to summary judgment on Shelton's ADA and FCRA claims.[5]

### CONCLUSION

Genuine issues of material fact remain as to whether PwC is entitled to summary judgment on Counts II, III, and IV. PwC may be entitled to summary judgment on Count I under Rule 56(f).

Accordingly, Defendant's Motion for Summary Judgment (Dkt. 21) is **DENIED** *in part*. On or before **May 12, 2014**, the parties shall **FILE** briefs, not to exceed **five (5) pages**, without substantive footnotes, addressing whether summary judgment should be granted in favor of Defendant on Count I on the basis Shelton failed to provide sufficient notice under 29 C.F.R. § 825.303(b), with record citations to the evidence of record.

**DONE AND ORDERED** this 2nd day of May, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[5] PwC argues that working from home was not a "reasonable" accommodation because attendance on-site was an essential function of the position. This argument is not dispositive for the same reasons there remain genuine disputes of material fact as to whether Shelton was a "qualified individual." PwC also argues that Shelton cannot demonstrate that she was subjected to unlawful discrimination as a result of her disability because she was fired for another reason: excessive absences. That argument is likewise unpersuasive, as Shelton has proffered sufficient evidence for a reasonable jury to conclude that she was terminated because her disability prevented her from regularly being on-site.